## GILROY v CONWAY

Docket No. 79979. Submitted May 8, 1985, at Grand Rapids. Decided May 19, 1986.

Plaintiff, John Gilroy, brought an action in the Kalamazoo Circuit Court against defendant, Robert Conway, doing business as Conway Studios, seeking an accounting, injunctive relief to prevent dissipation of assets alleged to be those of a former partnership involving the parties, and damages for alleged conversion of property and breach of fiduciary duty. The trial court, Donald M. Goodwillie, Jr., J., held that the defendant: knowingly violated the provisions of the Michigan Uniform Partnership Act; knowingly and willfully violated his fiduciary relationship as a partner; and knowingly and willfully converted partnership assets to his own use. The trial court entered an order and judgment awarding plaintiff $53,779.46 for his interest in the partnership business, $10,000 as exemplary damages, and his actual attorney fees and costs resulting from work necessitated by defendant's denial of certain allegations contained in plaintiff's complaint. Defendant appeals. *Held:*

1. The trial court's conclusions regarding weight and credence to be given to the testimony of a certain expert witness as to the value of the business was not clearly erroneous. The trial court's conclusion that a witness for the defendant, Jack Dehn, was not a qualified expert was not an abuse of discretion.

2. The findings of the trial court failed to take into account equipment left at the partnership's place of business, which plaintiff took into his possession, and $2,851.33 in checks from customers deposited in the trust account of plaintiff's attorney. The defendant is entitled to credit for one-half of the total

#### REFERENCES

Am Jur 2d, Costs §§ 72-78.

Am Jur 2d, Damages § 245.

Am Jur 2d, Expert and Opinion Evidence §§ 181-189.

Am Jur 2d, Partnership § 364.

Necessity and admissibility of expert testimony as to credibility of witness. 20 ALR3d 684.

See also the annotations in the ALR3d/4th Quick Index under Damages; Punitive Damages; Costs.

value of such checks and equipment, $5,041.33, or $2,520.66, and the judgment is to be modified accordingly.

3. The purpose of exemplary damages in Michigan has not been to punish the defendant but to render the plaintiff whole by compensating for mental injury in a limited class of cases where such mental injury is the result of outrageous conduct. This is not such a case.

4. Damages for mental injury are not recoverable for breach of commercial contracts having as their purpose economic rather than personal interests. There is no tortious conduct here existing independent of the breach of the partnership contract. The Uniform Partnership Act does not provide an aggrieved partner any remedy other than to be made whole economically.

5. The partnership was terminable at the will of either partner since no definite term was specified for its duration. Plaintiff cannot claim damages for his disappointment over its termination by defendant. The trial court erred in granting plaintiff the $10,000 in exemplary damages and the judgment is modified accordingly.

6. The trial court did not abuse its discretion in assessing costs and attorney fees against defendant as a result of his denial of certain allegations in plaintiff's complaint. The denials were unreasonable and plaintiff is entitled to recover his expenses of proving that which should have been admitted.

Affirmed as modified.

1. WITNESSES — EXPERT WITNESSES — APPEAL — COURT RULES.

The weight and credence to be given to expert testimony is for the trial court to determine; the Court of Appeals applies a clear error standard of review to such a determination (GCR 1963, 517.1; MCR 2.613[C]).

2. WITNESSES — EXPERT WITNESSES — RULES OF EVIDENCE.

The qualification of a witness to testify is a preliminary question to be determined by the trial court; the Court of Appeals reviews such a determination applying an abuse of discretion standard of review (MRE 104[a]).

3. DAMAGES — EXEMPLARY DAMAGES.

The purpose of an award of exemplary damages in Michigan is not to punish the defendant but to render the plaintiff whole by compensating for mental injury in a limited class of cases where such mental injury is the result of outrageous conduct.

4. DAMAGES — EXEMPLARY DAMAGES — COMMERCIAL CONTRACTS.

Damages for mental injury are not recoverable for breach of

commercial contracts having as their purpose economic rather than personal interests; exemplary damages may not be awarded in common law actions brought for breach of a commercial contract absent allegation and proof of tortious conduct existing independent of the breach.

5. PARTNERSHIP — TORTS — CONVERSION — BREACH OF CONTRACT.

A cotenant in partnership may not maintain a tort action for fraudulent conversion of partnership property against another cotenant in partnership; a partner may not maintain an action in tort against another partner who by arbitrary or bad faith breach of the partnership contract has caused the termination of the partnership.

6. PARTNERSHIP — UNIFORM PARTNERSHIP ACT — PARTNERSHIP FIDUCIARY DUTY.

The Uniform Partnership Act defines identically the partnership fiduciary duty and the remedy for its breach, i.e., to account (MCL 449.21; MSA 20.21).

7. PARTNERSHIP — TERMINATION OF PARTNERSHIP.

A partnership is terminable at the will of any one of its partners where no definite term has been specified for the duration of the partnership (MCL 449.31; MSA 20.31).

8. PLEADING — UNWARRANTED ALLEGATIONS AND DENIALS — COSTS — ATTORNEY FEES — COURT RULES.

Costs and attorney fees may be assessed against a party and his attorney for reasonable expenses incurred by an opposing party because of the filing of pleadings containing unwarranted allegations and denials by the party to be assessed (GCR 1963, 111.6; MCR 2.114[D] and [E]).

*Alan H. Silverman, P.C. (by Alan H. Silverman),* for plaintiff.

*Vandervoort, Cooke, McFee, Christ, Carpenter & Fisher (by Nelson Karre),* for defendant.

Before: SHEPHERD, P.J., and R. M. MAHER and W. R. PETERSON,* JJ.

W. R. PETERSON, J. Defendant cheated his part-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ner and appeals from the trial court's judgment granting that partner a remedy.

Plaintiff was an established commercial photographer in Kalamazoo who also had a partnership interest in another photography business, Colonial Studios, in Coldwater. In 1974, defendant became plaintiff's partner in Colonial Studios, the name of which was changed to Skylight Studios. Under the partnership agreement, defendant was to be the operating manager of the partnership, in return for which he would have a guaranteed draw. Except for the guaranteed draw, the partnership was equal in ownership and the sharing of profits.

Prior to defendant's becoming a partner, the business had acquired a small contractual clientele of schools for which the business provided student portrait photographs. The partners agreed to concentrate on this type of business, and both partners solicited schools with success. Gross sales, which were $40,000 in 1974, increased every year and amounted to $209,085 in 1980.

In the spring of 1981, defendant offered to buy out plaintiff and some negotiations followed. On June 25, 1981, however, plaintiff was notified by the defendant that the partnership was dissolved as of July 1, 1981. Plaintiff discovered that defendant: had closed up the partnership's place of business and opened up his own business; had purchased equipment and supplies in preparation for commencing his own business and charged them to the partnership; and had taken with him the partnership employees and most of its equipment.

Defendant had also stolen the partnership's business. He had personally taken over the business of some customers by telling them that the partnership was being dissolved; in other cases he simply took over partnership contracts without

telling the customers that he was then operating on his own. Plaintiff also learned that defendant's deceit had included the withdrawal, without plaintiff's knowledge, of partnership funds for defendant's personal use in 1978 in an amount exceeding $11,000.

The trial judge characterized the case as a "classic study of greed" and found that defendant had in effect appropriated the business enterprise, holding that defendant had "knowingly and wilfully violated his fiduciary relationship as a partner by converting partnership assets to his use and, in doing so, literally destroying the partnership." He also found that the partnership could have been sold as a going business on June 30, 1981, and that after a full accounting, it had a value on that date of $94,596 less accounts payable of $17,378.85, or a net value of $77,217.15. The division thereof, after adjustments for plaintiff's positive equity or capital and defendant's negative equity or capital, resulted in an award to plaintiff for his interest in the business of $53,779.46.[1]

Defendant argues that the finding of the trial judge as to the value of the business as of June 30, 1981, was not supported by the proofs at trial. The gist of the argument, however, is not that there were no proofs to substantiate the finding as to value, but that the witness whose testimony was the basis for the finding was less credible than defendant's accountant who gave the opinion that the business had no value except for its cash on hand and the value of equipment and fixtures. The expert upon whose testimony the trial judge relied had substantial experience in the field of school portrait photography and was in fact an expert

[1] While other methods of computing damages might have been argued, neither party quarrels with this method of determining plaintiff's remedy for economic damages.

brought to trial by the defendant whose valuation testimony was brought out by cross-examination. The weight and credence to be given to the testimony of the experts was for the trial judge to determine, *Sampson v Veenboer,* 252 Mich 660; 234 NW 170 (1931); *Coats v Bussard,* 94 Mich App 558; 288 NW2d 651 (1980), and a review of the record does not persuade us that his conclusions were clearly erroneous. GCR 1963, 517.1, now MCR 2.613(C); *Precopio v Detroit,* 415 Mich 457; 330 NW2d 802 (1982).

Defendant also claims that the trial court committed error in excluding the testimony of one Jack Dehn as to his opinion on the valuation of the partnership. The qualification of a witness to testify is a preliminary question to be determined by the trial judge, MRE 104(a). The trial court found that the witness was not qualified as an expert and we find no abuse of discretion in his ruling. *Elsasser v American Motors Corp,* 81 Mich App 379; 265 NW2d 339 (1978).

We do, however, acknowledge the accuracy of defendant's claim that the findings of the trial judge failed to take into account equipment left at the place of business, which plaintiff took into his possession on July 1, 1981, and checks from customers deposited in the trust account of plaintiff's attorney. Since the trial judge's award was based on the total value of the partnership business on June 30, 1981, defendant claims that he is entitled to credit for one-half the value of such property and checks. Plaintiff makes no response to this claim.

There is no difficulty in ascertaining from the record the amount of the checks which plaintiff's counsel acknowledged. They total $2,851.33. There is more difficulty determining the value of the equipment left behind by defendant since the trial

judge made no finding pertaining thereto. Defendant had prepared a listing of those items of equipment in which listing he placed a valuation thereon. That valuation is clearly highly inflated and is unsubstantiated by any evidence. Plaintiff testified that he sold a phone system for $1,500, but that many of the items listed by defendant were not found, that others were obsolete or out of repair, and that the total value of those items was roughly $690. That testimony was not contradicted and we take it as accurate. Defendant is thus entitled to credit for one-half of the total value of such checks and equipment, $5,041.33, or $2,520.66, and the judgment may be modified accordingly.

Plaintiff also sought exemplary damages. Count II of the complaint alleged that defendant's conduct constituted a breach of defendant's fiduciary duty to his partner under §§ 19-22 of the Uniform Partnership Act,[2] and Count III alleged conversion of partnership property. Each count contained allegations that defendant's conduct was wilful, wanton and in reckless disregard of plaintiff's rights and that such conduct had caused injury to plaintiff's feelings, including humiliation, indignity and a sense of moral outrage. The prayer for relief sought exemplary damages therefor.

Plaintiff's testimony on the point was brief. He said:

The effect of really the whole situation, and I think it was most apparent when I walked into the empty building, was extreme disappointment and really total outrage at the fact that something that

[2] MCL 449.19-449.22; MSA 20.19-20.22. Sections 19, 20 and 22 provide for the keeping of books, the right of partners to inspect same, the duty of partners to render information, and the right of partners to an accounting. Section 21 makes a partner accountable to the partnership as a fiduciary.

> I had given the utmost of my talent and creativity, energy, and whatever time was necessary to build, was totally destroyed and there was just nothing of any value that was left . . . . My business had been stolen and there wasn't a thing that I could do about it. And to me, that was very humiliating that one day I had something that I worked 10 years on, and the next day I had absolutely nothing of any value . . . .

As noted above, the trial judge found that defendant had literally destroyed the partnership by knowingly and wilfully converting partnership assets in violation of his fiduciary duty as a partner. He also found that plaintiff had suffered a sense of outrage, indignity and humiliation and awarded him $10,000 as exemplary damages.

Defendant appeals from that award, asserting that plaintiff's cause of action arises from a breach of the partnership contract and that exemplary damages may not be awarded for breach of that contract.

Plaintiff argues that the claim for exemplary damages is not for breach of the partnership contract but rather that the breach of a fiduciary duty and the conversion of partnership assets by a partner are torts independent of the partnership contract, for which torts exemplary damages may be awarded. Plaintiff cites no authority for that proposition, nor do we find any such precedent.[3] It

---

[3] In *Hayes-Albion Corp v Kuberski,* 421 Mich 170; 364 NW2d 609 (1984), a claim was made by plaintiff corporation for exemplary damages arising from defendant employee's breach of fiduciary duty to preserve the employer's trade secrets. The Court, after noting that exemplary damages are not punitive but compensatory, merely said that the claimed injury (in addition to lost profits), loss of time that defendant devoted to a competitor while being paid by plaintiff, might be compensable but not as exemplary damages. The Court did not discuss the question of whether a breach of fiduciary duty would justify exemplary damages where there is consequential mental injury. And, quaere, how can a corporation suffer mental injury?

is true that decisions may be found in other states allowing punitive damages for breach of a fiduciary duty, as in *Jerman v O'Leary,* 145 Ariz 397; 701 P2d 1205 (Ariz App, 1985), a partnership case. Those decisions, however, are found in forums in which, unlike Michigan, punitive damages are recoverable as punishment for intentional wrongs.[4] In Michigan, however, the purpose of exemplary damages has not been to punish the defendant but to render the plaintiff whole by compensating for mental injury[5] in a limited class of cases where such mental injury is the result of outrageous conduct. *Wise v Daniel,* 221 Mich 229; 190 NW 746 (1922); *Smith v Jones,* 382 Mich 176; 169 NW2d 308 (1969); *Willett v Ford Motor Co,* 400 Mich 65; 253 NW2d 111 (1977); *Bailey v Graves,* 411 Mich 510; 309 NW2d 166 (1981). This is not such a case.

Damages for mental injury are not recoverable for breach of commercial contracts having as their purpose economic rather than personal interests. *Valentine v General American Credit, Inc,* 420 Mich 256; 362 NW2d 628 (1984); *Stewart v Rudner,* 349 Mich 459; 84 NW2d 816 (1957); *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980). Moreover, as noted in *Kewin,* pp 420-421:

> [A]bsent allegation and proof of tortious conduct *existing independent of the breach* (citation omitted) exemplary damages may not be awarded in common-law actions brought for breach of a commercial contract. [Emphasis added.]

[4] For cases allowing exemplary damages for fraud or for malicious and intentional breach of a fiduciary duty, see annotations in 84 ALR 1345, 1351 and 67 ALR2d 952, and *International Bankers Life Ins Co v Holloway,* 368 SW2d 567 (Tex, 1963).

[5] The mental injury has been characterized in terms of feelings of anguish, distress, embarrassment, humiliation and indignity. See, e.g., *Veselenak v Smith,* 414 Mich 567, 574-576; 327 NW2d 261 (1982).

If it were to be assumed that a partner's breach of his fiduciary duty or appropriation of partnership equipment and business contracts to his own use and profit are torts,[6] it is clear that the duty breached arises from the partnership contract. One acquires the property interest of a cotenant in partnership only by the contractual creation of a partnership; one becomes a fiduciary in partnership only by the contractual undertaking to become a partner. There is no tortious conduct here existing independent of the breach of the partnership contract.

Neither do we see anything in the Uniform Partnership Act to suggest than an aggrieved partner is entitled to any remedy other than to be made whole economically. The act defines identically the partnership fiduciary duty and the remedy for its breach, i.e., to account:

> Sec. 21. (1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property; [MCL 449.21; MSA 20.21.]

So, the cases involving a partner's breach of the fiduciary duty to other partners have been concerned solely with placing the wronged partners in the economic position that they would have enjoyed but for the breach. See, e.g., *Lynn v Arehart,* 231 Mich 144; 203 NW 834 (1925); *Penner v De-*

---

[6] To the contrary, it does not appear that a cotenant in partnership can maintain a tort action for fraudulent conversion of partnership property against another cotenant in partnership. *Reed v Gould,* 105 Mich 368; 68 NW 415 (1895). Neither can a partner maintain an action in tort against a partner who by arbitrary or bad faith breach of the partnership contract has caused the termination of the partnership. 60 Am Jur 2d, Partnership, § 364, p 248.

*Nike,* 288 Mich 488; 285 NW 33 (1939);`Van Stee v Ransford,* 346 Mich 116; 77 NW2d 346 (1956).

And finally, we think that the absurdity of allowing damages for mental injury because of the breach of a partnership contract, or the duties stemming therefrom, is shown by answering the question asked in *Veselenak v Smith,* 414 Mich 567, 575; 327 NW2d 261 (1982): "[W]hat injury is sought to be compensated?"

The answer, from plaintiff's testimony, is that the mental injury stemmed from the termination of the business that he had worked hard to create. However disappointing that may have been to plaintiff, he had no right to compel the continuation of the partnership. No definite term having been specified for the duration of the partnership, it was terminable at the will of either partner. MCL 449.31; MSA 20.31. One who enters into such a fragile relationship cannot claim damages for disappointment when it shatters.

## Costs

Defendant also argues that the trial court erred in assessing costs, including attorney fees, under GCR 1963, 111.6, which provides[7] as follows:

[7] The Michigan Court Rules of 1985 not only continue the substance of GCR 1963, 111.6, but also authorize sanctions against counsel.

MCR 2.114(D) provides:
  Effect of Signature. The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by a signer that . . . (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the pleading *is well grounded in fact* . . . . [Emphasis added.]

MCR 2.114(E) provides:
  Sanctions for Violation. If a pleading is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a repre-

Unwarranted Allegations and Denials. If it appears at the trial that any fact alleged or denied by a pleading ought not to have been so alleged or denied and such fact if alleged is not proved or if denied is proved or admitted, the court may, if the allegation or denial is unreasonable, require the party making such allegation or denial to pay to the adverse party the reasonable expenses incurred in proving or preparing to prove or disprove such fact as the case may be, including reasonable attorney fees.

The trial judge's findings were as follows:

Plaintiff has further brought to this court's attention the defendant's blatant disregard of the provisions of GCR 1963, 111.6 in defendant's answers to paragraphs 8, 20, and 25 of plaintiff's first amended complaint, thereby requiring plaintiff to interview, subpoena, and present in court, ten witnesses whose testimony could have been avoided by defendant's adherence to the court rules. Accordingly, plaintiff may assess his actual attorney fees and costs resulting therefrom.

The factual allegations of paragraphs 8, 20 and 25 of the first amended complaint referred to by the trial judge asserted that defendant took for himself the benefits of the partnership contracts and failed to pay the income therefrom to the partnership or to account therefor; that defendant appropriated partnership accounts and assets to his own use; that defendant withdrew capital of the partnership and applied it to his own use without notice to plaintiff or accounting to the partnership; that defendant failed to pay plaintiff

sented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.

the capital and income due plaintiff;[8] and that defendant took possession of, and used as his own, partnership property including inventory, equipment, customer lists, contract rights and expectancies, and accounts. Each of the allegations, thus, were factual; indeed, they were allegations of facts the truth or falsity of which had to be within defendant's personal knowledge.

Defendant's answer denied each allegation. Each was proved by plaintiff's evidence to be true; indeed, during the course of his testimony, defendant admitted the truth of many of the allegations.

We find no abuse of discretion in the conclusions of the trial judge, *Christensen v Christensen,* 126 Mich App 640; 337 NW2d 611 (1983). The denials were unreasonable and plaintiff is entitled to recover his expenses of proving that which should have been admitted. *Valley National Bank of Arizona v Kline,* 108 Mich App 133; 310 NW2d 301 (1981).

The judgment is affirmed as modified herein.

---

[8] Paragraph 20E also alleged that defendant failed to hold plaintiff harmless from liability for partnership debts. The trial judge made no specific finding on that point and the record does not establish that that was true, but neither does it indicate that expenses and attorney fees were taxed as to that particular allegation.