URBAIN v BEIERLING

Docket No. 309049. Submitted May 15, 2013, at Detroit. Decided May 21, 2013, at 9:05 a.m.

Katie Urbain brought an action in the Oakland Circuit Court against Petra Beierling, Maureen Clinesmith, and iFive Education, alleging breach of a partnership agreement, breach of fiduciary duty, breach of Beierling's and Clinesmith's duty to render information, improper dissolution of the partnership, civil conspiracy, and concert of action and requesting an accounting. Beierling had developed a concept for an educational software business marketing online learning games to teachers and formed a partnership with Urbain and Clinesmith. There was no written partnership agreement. Clinesmith loaned the partnership $10,000 and the three were equal partners and agreed to equally divide the work, with each to receive 1/3 of the profits after Clinesmith's loan was repaid. The partnership intended to launch the website in early February 2010, but because of several issues, including a personality conflict between Beierling and Urbain, the website launch was delayed and the partnership broke down. The partners had several communications, during which time Beierling told Urbain that Urbain was no longer a partner. Beierling and Clinesmith dissolved the partnership and commenced a successor partnership, consisting of only Beierling and Clinesmith, which launched the website within weeks. The successor partnership, however, sold only one unit for a total of $69.99. The court, Rae Lee Chabot, J., granted defendants' motion for summary disposition on all of Urbain's claims. Urbain appealed.

The Court of Appeals *held*:

1. The Uniform Partnership Act (UPA), MCL 449.1 *et seq.*, applied in this case. Urbain argued that Beierling and Clinesmith's decision to discontinue the partnership and oust her was wrongful absent the consent of all partners pursuant to MCL 449.18(h) and that discontinuing the partnership was an act that made it impossible to carry on the ordinary business of the partnership and thus had to be authorized by all partners according to MCL 449.9(3)(c). MCL 449.31(1)(b), however, provides that dissolution of a partnership occurs without a violation of the partnership

agreement by the express will of any partner when no definite term or particular undertaking was specified in the agreement. Urbain admitted in her complaint that the partners specified neither a definite term nor a particular undertaking. Because there was no specific term set forth in the partnership agreement, which was open-ended about the partnership's undertakings with regard to developing websites, the partnership could have been dissolved by the express will of any partner under the UPA. Accordingly, neither Clinesmith nor Beierling breached the partnership agreement when they dissolved the partnership, and the trial court properly granted summary disposition for defendants on Urbain's claim alleging breach of the partnership agreement.

2. Urbain also claimed that she was entitled to damages in any event as a result of the dissolution. The UPA seeks to make partners whole economically. MCL 449.18(a) provides that each partner must be repaid his or her contributions, whether by way of capital or advances to the partnership property, and shares equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied. Therefore, on dissolution of the partnership, Urbain was entitled to be repaid her capital contribution and share equally in all profits. However, Urbain did not make a capital contribution and there was no profit to be shared, so she was not entitled to damages.

3. Urbain argued that Beierling and Clinesmith had acted in bad faith, both leading up to and after the discontinuation of the partnership, when they failed to disclose their intent to discontinue the partnership while at the same time allowing Urbain to continue to perform partnership work for which she would reap no rewards. The fiduciary relationship of partners imposes on them obligations of the utmost good faith and integrity in their dealings with one another in partnership affairs. The fiduciary duty among partners is generally one of full and frank disclosure of all relevant information. Each partner has the right to know all that the others know, and each must fully disclose all material facts he or she knows that relate in any way to the partnership's affairs. Disclosure to one or several partners does not fulfill this duty with respect to every other partner. The fiduciary duty between partners arises only from the partnership agreement, however. A partner cannot maintain an action in tort against a partner who by an arbitrary or bad-faith breach of the partnership agreement caused the termination of the partnership. Because the fiduciary relationship between Urbain and Beierling and Clinesmith arose only by virtue of the their agreement, the trial court properly determined that the dissolution of the partnership could not form

the basis for a breach of fiduciary duty and appropriately granted summary disposition for defendants.

4. Urbain maintained that Beierling and Clinesmith breached their fiduciary duty to her when, after discontinuing the partnership, they formed a successor partnership with the same name and converted all partnership assets to the new partnership, thus depriving Urbain of those assets. Under MCL 449.21(1), partners are held accountable as fiduciaries. Every partner must account to the partnership for any benefit and hold as its trustee any profits derived by the partner without the other partners' consent from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by the partner of the partnership's property. The partnership had no physical assets other than a computer that Clinesmith purchased to perform partnership accounting, and the website generated no income except from one subscription sale. The partnership also had an outstanding loan to Clinesmith that to be repaid before any profits were to be distributed.

5. Urbain also contended that Beierling and Clinesmith breached their fiduciary duty to her when they refused to compensate her with an hourly wage for her contributions to the partnership. MCL 449.18(f), however, states that a partner is not entitled to remuneration for acting in the partnership business. As an equal partner, Urbain would have been entitled under MCL 449.18(a) to ⅓ of the partnership's profits, but there were no profits to distribute and she was not entitled to damages.

6. Urbain argued that Beierling and Clinesmith breached their duty to render information to her. MCL 449.20 imposes a duty on partners to render on demand true and full information to any partner of all things affecting the partnership. MCL 449.20 imposes a duty to disclose all known information that is significant and material to the affairs or property of the partnership. With regard to Urbain's status in the partnership immediately before she was ousted, Beierling and Clinesmith did not conceal the fact that they had decided to remove her from the partnership. Rather, all the partners discussed the fact that Beierling no longer wanted to work with Urbain and wanted her out of the partnership and exchanged several communications on the topic. With regard to their failure to provide Urbain information she requested concerning the partnership's financial status at the time of its dissolution, Urbain did not identify what significant and material partnership information she had demanded from Beierling and Clinesmith but did not receive when she was ousted, failed to identify how the circumstances would have differed, and failed to indicate the

damages she suffered as a result of the alleged violation of MCL 449.20. The trial court properly granted summary disposition for defendants on Urbain's claim alleging breach of duty to render information.

7. Under MCL 449.22, a partner has the right to a formal accounting of partnership affairs if (1) the partner is wrongfully excluded from the partnership business or possession of its property by the copartners, (2) the right exists under the terms of any agreement, or (3) other circumstances render it just and reasonable. It was just and reasonable for Urbain to request a formal accounting of partnership affairs when she departed from the partnership. Beierling and Clinesmith eventually provided her a full accounting of the business in discovery but did not do so at the time of her request. Beierling and Clinesmith should have provided Urbain a formal accounting of partnership affairs within a reasonable time after the partnership dissolved, and litigation should not have been necessary for her to obtain the accounting. Urbain failed to demonstrate, however, that she was damaged by the breach because the partnership was not profitable, and the trial court properly granted summary disposition for defendants on Urbain's claim seeking an accounting.

8. MCL 449.40 sets forth the rules for distributing partnership property upon dissolution of a partnership. In general, MCL 449.40(b) provides that creditors should be paid first, then monies owed to partners for liabilities other than for capital and profits, followed by distribution of capital and, finally, profits to partners. Valuation should be made at the time of dissolution, and winding up a partnership's affairs entails gathering the assets, paying and settling debts, and distributing any net surplus to parties entitled to it. Under MCL 449.37, partners who have not wrongfully dissolved the partnership have the right to wind up the partnership affairs. Thus, Beierling and Clinesmith should have afforded Urbain an opportunity to be involved in the winding-up, but she had no input whatsoever because Beierling and Clinesmith took sole control of all partnership affairs, including the launch of the website and partnership finances. The loan, however, was to be repaid before any partnership assets or profits would be distributed to the partners. While it would have been prudent to have a valuation of the partnership's website and other intangibles calculated at the time of partnership's dissolution, doing so would have been a formidable task considering that the website had not yet launched. In any event, the market set the value of the business after the website's launch when only one sale was generated despite extensive targeted marketing to industry pro-

fessionals. There were no assets or profits to distribute to Urbain, and the trial court properly granted summary disposition for defendants on her dissolution-of-partnership claim.

9. A civil conspiracy is a combination of two or more persons seeking by some concerted action to accomplish a criminal or unlawful purpose or accomplish a lawful purpose by criminal or unlawful means. To establish a concert-of-action claim, a plaintiff must prove that all the defendants acted tortiously pursuant to a common design that caused harm to the plaintiff. For both a claim of civil conspiracy and a claim of concert of action, the plaintiff must establish some underlying tortious conduct. A partner cannot maintain an action in tort against a partner who by an arbitrary or bad-faith breach of the partnership agreement caused the termination of the partnership. Because Urbain's civil-conspiracy and concert-of-action claims were based on her claims related to the dissolution of the partnership and those claims arose only from the partnership agreement and therefore sounded in contract rather than tort, Urbain failed to allege a separate actionable tort. Given that Urbain did not establish that Beierling and Clinesmith committed an underlying tort, the trial court properly granted summary disposition for defendants on those claims.

Affirmed.

1. PARTNERSHIP — FIDUCIARY DUTY — DISCLOSURE — BREACH.

The fiduciary relationship of partners imposes on them obligations of the utmost good faith and integrity in their dealings with one another in partnership affairs and is generally one of full and frank disclosure of all relevant information; each partner has the right to know all that the others know, and each must fully disclose all material facts he or she knows that relate in any way to the partnership's affairs; disclosure to one or several partners does not fulfill this duty with respect to every other partner.

2. PARTNERSHIP — FIDUCIARY DUTY — BREACH — TERMINATION OF PARTNERSHIP-TORTS.

The fiduciary duty between partners arises only from the partnership agreement, so a partner cannot maintain an action in tort against a partner who by an arbitrary or bad-faith breach of the partnership agreement caused the termination of the partnership.

3. CONSPIRACY — CONCERT OF ACTION — TORTS — PARTNERSHIP- TERMINATION OF PARTNERSHIP.

A civil conspiracy is a combination of two or more persons seeking by some concerted action to accomplish a criminal or unlawful

purpose or accomplish a lawful purpose by criminal or unlawful means; to establish a concert-of-action claim, a plaintiff must prove that all the defendants acted tortiously with a common design that caused harm to the plaintiff; for both a claim of civil conspiracy and a claim of concert of action, the plaintiff must establish some underlying tortious conduct; a partner cannot maintain an action in tort against a partner who by an arbitrary or bad-faith breach of the partnership agreement caused the termination of the partnership because claims related to the dissolution of a partnership arise only from the partnership agreement and therefore sound in contract rather than tort.

*The Troy Law Firm* (by *Daniel E. Chapman* and *Kimberly A. Cochrane*) for Katie Urbain.

*Ray M. Toma, P.C.* (by *Ray M. Toma* and *Edward F. Kickman*), for Petra Beierling, Maureen Clinesmith, and iFive Education.

Before: DONOFRIO, P.J., and MARKEY and OWENS, JJ.

PER CURIAM. Plaintiff appeals as of right the trial court's order granting defendants' motion for summary disposition in this action involving a dissolved partnership.[1] Because the partnership could be dissolved by the express will of any partner pursuant to the Uniform Partnership Act (UPA), MCL 449.1 *et seq.*, plaintiff's breach of fiduciary duty claim fails as a matter of law, plaintiff has failed to present evidence showing that defendants breached their duty to render information, plaintiff's dissolution-of-partnership and accounting claims fail because the partnership had no profits or assets to distribute to the partners, and plaintiff's concert-of-action and civil-conspiracy claims lack merit because plaintiff has failed to establish that defendants committed an underlying tort, we affirm.

---

[1] The parties stipulated the dismissal of defendants' countercomplaint against plaintiff, which is not at issue in this appeal.

I. FACTUAL BACKGROUND

This case arises out of a partnership that lasted approximately four months, from November 2009 through February 2010. Defendant Petra Beierling developed a concept for an educational software business marketing online learning games to teachers. Beierling had contacts in the software and educational arenas and wanted to stream the online games into classrooms through periodic paid subscriptions. Beierling pitched her idea to two friends, plaintiff Katie Urbain and defendant Maureen Clinesmith. Both Urbain and Clinesmith were interested, and the three women formed a partnership. The partnership did not have a written partnership agreement.

Initially, Clinesmith orally agreed to invest $10,000 in the partnership, and, for purposes of equity, Beierling's and Urbain's equity stakes were to be valued by the amount of time that each person invested in the business at an hourly rate of $25. Very shortly thereafter, Clinesmith decided to become an active partner and loaned the partnership money instead of investing money in the business. The three partners decided to be equal partners and equally divide the work, each receiving 1/3 of the profits after Clinesmith's loan was repaid. After Clinesmith opted to become an active partner, the partners abandoned the idea of tracking hours. Urbain testified that she kept track of the hours that she performed work for the partnership for only the first few days.

Over the next several months, the partners worked to create a marketing plan to sell subscriptions, write questions for game banks, and develop and design their website, ifiveeducation.com. The partners intended to launch the website in early February 2010 because they believed that that was the best time for sales in the

education industry. Because of several issues, however, including an apparent personality conflict between Beierling and Urbain, the website launch was delayed and the partnership broke down. The partners had several communications and met in person at least once, during which time Beierling told Urbain that Urbain was no longer a partner in the venture. Urbain felt that she had been ousted from the partnership and was surprised when Beierling cut off her access to a partnership e-mail account and discontinued her website administration privileges. Beierling and Clinesmith dissolved the partnership and commenced a successor partnership, consisting of only Beierling and Clinesmith, which launched the website within weeks. Despite e-mail blasts and other targeted marketing, the partnership sold exactly one unit for a total of $69.99.

Plaintiff filed the instant action against defendants, alleging breach of the partnership agreement (count I), breach of fiduciary duty (count II), breach of their duty to render information (count IV), improper dissolution of the partnership (count VI), civil conspiracy (count VII), and concert of action (count VIII) and requesting an accounting (count V).[2] The trial court granted defendants' motion for summary disposition on all of plaintiff's claims. Plaintiff now appeals as of right.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Lakeview Commons Ltd Partnership v Empower Yourself, LLC*, 290 Mich App 503, 506; 802 NW2d 712 (2010). The trial court granted summary disposition on plaintiff's civil-conspiracy and

---

[2] Plaintiff also alleged innocent misrepresentation (count III), but on appeal she does not challenge the trial court's dismissal of that claim.

concert-of-action claims pursuant to MCR 2.116(C)(8). "A motion for summary disposition brought pursuant to MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the allegations of the pleadings alone." *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006). "[T]he motion tests whether the complaint states a claim as a matter of law, and the motion should be granted if no factual development could possibly justify recovery." *Id*. The trial court granted summary disposition on plaintiff's remaining claims pursuant to MCR 2.116(C)(10). A motion under subrule (C)(10) tests the factual sufficiency of a complaint. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). "In evaluating such a motion, a court considers the entire record in the light most favorable to the party opposing the motion, including affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties." *Id*. "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Further, we review de novo issues involving statutory interpretation. *Apsey v Mem Hosp*, 477 Mich 120, 127; 730 NW2d 695 (2007).

### III. LEGAL ANALYSIS

#### A. BREACH OF THE PARTNERSHIP AGREEMENT

The UPA defines a partnership as "an association of 2 or more persons . . . to carry on as co-owners a business for profit[.]" MCL 449.6. Pursuant to the UPA, "[t]he dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." MCL 449.29. The dissolution of a partnership may occur by the acts of the

partners, by operation of law, or by decree of the trial court. See MCL 449.31 and MCL 449.32. Because a partner's right to dissolve the partnership is "inseparably incident to every partnership," there can be no indissoluble partnership. *Atha v Atha*, 303 Mich 611, 614; 6 NW2d 897 (1942) (quotation marks and citation omitted).

Plaintiff argues that defendants' decision to discontinue the partnership and oust her was wrongful absent the consent of all partners pursuant to MCL 449.18(h). Plaintiff also asserts that discontinuing the partnership was an act that made it impossible to carry on the ordinary business of the partnership, which was required to be authorized by all partners according to MCL 449.9(3)(c). Plaintiff's arguments fail to acknowledge the section of the UPA that sets forth circumstances under which a partner may dissolve a partnership.

The UPA specifies that

[d]issolution is caused:

(1) Without violation of the agreement between the partners:

\* \* \*

(b) By the express will of any partner when no definite term or particular undertaking is specified[.] [MCL 449.31(1)(b).]

Plaintiff admitted in her first amended complaint that the partners did not specify a definite term for the partnership and, similarly, did not specify a particular undertaking. Plaintiff maintained that the partners agreed "[t]o carry on the partnership business indefinitely." Plaintiff also maintained that the partners agreed "[t]o work together to create, design, launch,

fund, market, and make changes and improvements, as necessary, to the website, or other websites they may develop[.]" Therefore, because there was no specific term set forth in the partnership agreement, which was open-ended about the partnership's undertakings with regard to developing websites then and in the future, the partnership could be dissolved by the express will of any partner pursuant to the UPA. MCL 449.31(1)(b); *Rinke v Rinke*, 330 Mich 615, 623-624; 48 NW2d 201 (1951). Accordingly, neither Clinesmith nor Beierling breached the partnership agreement when they dissolved the partnership, and the trial court properly granted summary disposition for defendants on plaintiff's claim alleging breach of the partnership agreement.

With respect to plaintiff's argument that she is entitled to damages in any event as a result of the dissolution, we acknowledge that the UPA seeks to make partners whole economically. *Gilroy v Conway*, 151 Mich App 628, 637; 391 NW2d 419 (1986). MCL 449.18(a) states in part: "Each partner shall be repaid his or her contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied." Therefore, on dissolution of the partnership, plaintiff was entitled to be repaid her capital contribution and to share equally in all profits. As the trial court correctly determined, however, "[p]laintiff did not make a capital contribution nor was there a profit to be shared." Plaintiff has not established otherwise on appeal and, accordingly, is not entitled to damages.

### B. BREACH OF FIDUCIARY DUTY

Plaintiff next argues that defendants acted in bad faith, both leading up to and after the discontinuation

of the partnership, when they failed to disclose their intent to discontinue the partnership while at the same time allowing plaintiff to continue to perform partnership work for which she would reap no rewards.

> The courts universally recognize the fiduciary relationship of partners and impose on them obligations of the utmost good faith and integrity in their dealings with one another in partnership affairs. Partners are held to a standard stricter than the morals of the marketplace and their fiduciary duties should be broadly construed, "connoting not mere honesty but the punctilio of honor most sensitive." The fiduciary duty among partners is generally one of full and frank disclosure of all relevant information. Each partner has the right to know all that the others know, and each is required to make full disclosure of all material facts within his knowledge in any way relating to the partnership affairs. Thus, disclosure to one or several partners does not fulfill this duty as to every other partner. [*Band v Livonia Assoc*, 176 Mich App 95, 113-114; 439 NW2d 285 (1989) (citations omitted).]

In *Gilroy*, 151 Mich App at 637, this Court clearly articulated that the fiduciary duty between partners arises only from the partnership agreement:

> If it were to be assumed that a partner's breach of his fiduciary duty or appropriation of partnership equipment and business contracts to his own use and profit are torts, it is clear that the duty breached arises from the partnership contract. One acquires the property interest of a cotenant in partnership only by the contractual creation of a partnership; one becomes a fiduciary in partnership only by the contractual undertaking to become a partner. There is no tortious conduct here existing independent of the breach of the partnership contract.

The *Gilroy* Court further stated, "[A] partner [cannot] maintain an action in tort against a partner who by arbitrary or bad faith breach of the partnership contract has caused the termination of the partnership."

*Id.* at 637 n 6. Because the fiduciary relationship between plaintiff and defendants arose only by virtue of the parties' partnership agreement, the trial court properly determined that "the dissolution of the partnership cannot form the basis for a breach of fiduciary duty." Therefore, plaintiff's claim fails as a matter of law,[3] and summary disposition was appropriate.

Plaintiff also maintains that defendants breached their fiduciary duty to her when, after discontinuing the partnership, they formed a successor partnership with the same name and converted all partnership assets to the new partnership, thus depriving plaintiff of those assets. Under MCL 449.21(1), partners are held accountable as fiduciaries, and "[e]very partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property[.]" The record clearly indicates that the partnership had no physical assets other than a computer that Clinesmith purchased to perform partnership accounting and the website generated no income with the exception of that from one subscription sale in the amount of $69.99. It is also undisputed that the partnership had an outstanding loan to Clinesmith in the amount of at least $10,000, which plaintiff admits was to be repaid before any profits were to be distributed.

Plaintiff also contends that defendants breached their fiduciary duty to her when they refused to compensate her with an hourly wage for her contributions

---

[3] Although the trial court indicated that it granted summary disposition for defendants on plaintiff's breach of fiduciary duty claim pursuant to MCR 2.116(C)(10), it also opined that plaintiff's allegations failed to state a claim as a matter of law.

to the partnership. Plaintiff, however, overlooks MCL 449.18(f), which plainly states, "A partner is not entitled to remuneration for acting in the partnership business . . . ." As an equal partner, plaintiff would have been entitled to ⅓ of the partnership's profits, MCL 449.18(a), but there were no profits to distribute. Plaintiff unequivocally testified at her deposition that she understood that none of the partners would be paid until the enterprise began to "make money." Because the record clearly indicates that the partnership never made a profit to distribute, plaintiff is not entitled to damages.

### C. BREACH OF THE DUTY TO RENDER INFORMATION

Plaintiff next argues that defendants breached their duty to render information to her when they failed to inform her that they wanted her out of the partnership and instead continued to allow her to perform partnership work for which she would not be compensated. MCL 449.20 imposes a duty on partners to "render on demand true and full information of all things affecting the partnership to any partner . . . ." MCL 449.20 "has been broadly interpreted as imposing a duty to disclose all known information that is significant and material to the affairs or property of the partnership." *Band*, 176 Mich App at 113.

With regard to plaintiff's status in the partnership immediately before she was ousted, the record indicates that defendants did not conceal the fact that they had decided to remove plaintiff from the partnership. Deposition testimony from all three partners revealed that the partners discussed the fact that Beierling no longer wanted to work with plaintiff and wanted her out of the partnership. In fact, the partners exchanged several communications on the topic over the course of a few

days, including a series of e-mails, phone calls, and at least one in-person meeting, before Beierling terminated plaintiff's access to her partnership e-mail account and her website administration privileges. Thus, the record reveals that defendants did not breach their duty to render information with regard to plaintiff's status in the partnership.

Plaintiff also contends that defendants breached their duty to render information when they failed to provide her with information that she requested concerning the financial status of the partnership at the time of its dissolution. Specifically, plaintiff argues that her cause of action for violation of MCL 449.20 existed at the time of her ousting from the partnership and that defendants should not receive credit for the fact that they eventually provided all partnership information, financial and otherwise, to her as a part of the discovery process. Plaintiff, however, fails to identify the "significant and material" partnership information that she demanded from defendants but did not receive at the time that she was ousted. Plaintiff also fails to explain how the circumstances would have differed and fails to indicate the damages that she suffered as a result of defendants' alleged violation of MCL 449.20. Because plaintiff has not articulated exactly how defendants breached their duty to render information, or provided evidence to support her claim, the trial court properly granted summary disposition on plaintiff's claim alleging a breach of the duty to render information.

### D. ACCOUNTING

Plaintiff next contends that she requested an accounting of the partnership, which was not performed at the time of her request. Under MCL 449.22(a), (b), and (d), a partner has the right to a formal accounting

of partnership affairs "[i]f he is wrongfully excluded from the partnership business or possession of its property by his copartners," "[i]f the right exists under the terms of any agreement," or "[w]henever other circumstances render it just and reasonable." It appears from the facts of this case that it was "just and reasonable" for plaintiff to request a formal accounting of partnership affairs at the time of her departure from the partnership. It is undisputed that defendants eventually provided plaintiff a full accounting of the business. Plaintiff takes issue with the timing of the disclosure, however, arguing that defendants should not receive credit for the fact that they ultimately provided the accounting as part of the discovery process.

We agree with plaintiff that defendants should have provided her a formal accounting of partnership affairs pursuant to MCL 449.22 within a reasonable time after the partnership dissolved and that litigation should not have been necessary for plaintiff to obtain the accounting. Plaintiff fails, however, to demonstrate that she was in any way damaged by the breach because the partnership was not profitable. Again, the UPA aims to make an aggrieved partner economically whole. *Gilroy*, 151 Mich App at 637. Despite plaintiff's efforts, there were no partnership assets to partition or profits to share. Notably, in her first amended complaint, plaintiff sought an order compelling an accounting and an award of "money damages in the amount found due by the accounting[.]" Because the partnership had no profits to distribute, the trial court properly granted summary disposition on plaintiff's claim seeking an accounting.

### E. DISSOLUTION OF PARTNERSHIP (WINDING-UP)

Plaintiff next asserts that she had a right to account for her interests in the partnership on the date of its

dissolution. MCL 449.40 sets forth rules for distributing partnership property upon dissolution of a partnership. In general, MCL 449.40(b) provides that creditors should be paid first, then monies owed to partners for liabilities other than for capital and profits, followed by distribution of capital and, finally, profits to partners. Valuation should be made at the time of dissolution, and the winding-up of partnership affairs entails gathering the assets, paying and settling debts, and distributing any net surplus to parties entitled to it. *Wanderski v Nowakowski*, 331 Mich 202, 209-210; 49 NW2d 139 (1951).

Under MCL 449.37, "partners who have not wrongfully dissolved the partnership . . . [have] the right to wind up the partnership affairs[.]" Thus, defendants should have afforded plaintiff an opportunity to be involved in the winding-up of partnership affairs. The record reveals that plaintiff had no input whatsoever in the windup process because Beierling and Clinesmith took sole control of all partnership affairs, including the launch of the website and partnership finances.

Clinesmith, the partner responsible for accounting duties, testified with regard to winding up partnership affairs that she "personally look[ed] at the financials and recognized that there [were] only expenses. There were no profits." She testified:

> At that time there had not even been a sale. I looked at the fact that we had a website, that we had domain names, we had some games that were created, and in my estimation the value was less than the $10,000 that I had spent so far on the company, so I assumed the assets.

It appears from Clinesmith's testimony that she attempted to marshal partnership assets, value the assets at the time of dissolution, and distribute those assets.

Unfortunately, there was no surplus of assets over and above the $10,000 loan from Clinesmith.

Undoubtedly, defendants did not allow plaintiff to engage in any of the activities necessary to properly wind up the partnership. However, plaintiff has again failed to show that she was damaged. Plaintiff testified that she was aware of the $10,000 capital loan that Clinesmith had made to the partnership and that the loan was to be repaid before any partnership assets or profits would be distributed to the partners. This approach was consistent with MCL 449.40(b). While it would have been prudent to have a valuation of the partnership's website and other intangibles calculated at the time of partnership's dissolution, doing so would have been a formidable task considering that the website had not yet launched. In any event, it appears that the market set the value of the business after the website's launch when only one sale was generated despite extensive targeted marketing to industry professionals. While plaintiff claims that she was a "co-owner" of partnership property, the record reveals that there were no assets or profits to distribute to her. Accordingly, the trial court properly granted summary disposition for defendants on plaintiff's dissolution-of-partnership claim.

### F. CIVIL CONSPIRACY AND CONCERT OF ACTION

Finally, plaintiff contends that because the trial court erred by dismissing her tort claim of breach of fiduciary duty, it also erred by dismissing her claims of civil conspiracy and concert of action. This Court has defined a civil conspiracy as "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Advocacy Org*

*for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003), aff'd 472 Mich 91 (2005) (quotation marks and citation omitted). In addition, to establish a concert-of-action claim, a plaintiff must prove "that all defendants acted tortiously pursuant to a common design" that caused harm to the plaintiff. *Abel v Eli Lilly & Co*, 418 Mich 311, 338; 343 NW2d 164 (1984). For both civil conspiracy and concert of action, the plaintiff must establish some underlying tortious conduct. *Holliday v McKeiver*, 156 Mich App 214, 217-219; 401 NW2d 278 (1986); *Rencsok v Rencsok*, 46 Mich App 250, 252; 207 NW2d 910 (1973). In this case, the trial court correctly opined, "Both claims are not actionable torts, but rather require a separate tort before liability can attach . . . ."

"[A] partner [cannot] maintain an action in tort against a partner who by arbitrary or bad faith breach of the partnership contract has caused the termination of the partnership." *Gilroy*, 151 Mich App at 637 n 6. Because plaintiff's civil-conspiracy and concert-of-action claims are based on her claims related to the dissolution of the partnership and those claims arose only from the partnership agreement and therefore sound in contract rather than tort, plaintiff has failed to allege a separate actionable tort. Given that plaintiff has not established that defendants committed an underlying tort, she cannot sustain her claims of concert of action and civil conspiracy. Accordingly, the trial court properly granted summary disposition on those claims.

### IV. CONCLUSION

Having found no error requiring reversal, we affirm the trial court's order granting summary disposition for defendants.

Affirmed. Defendants, being the prevailing parties, may tax costs pursuant to MCR 7.219.

DONOFRIO, P.J., and MARKEY and OWENS, JJ., concurred.